IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONWIDE MUTUAL | : | |
| INSURANCE CO., a/s/o JAMES | : | Civil Action No. 1:05-CV-2509 |
| BOYD & DESIREE BOYD, | : | |
|     Plaintiffs | : | (Chief Judge Kane) |
| | : | |
| v. | : | |
| | : | |
| NATIONAL RV HOLDINGS, INC., | : | |
| d/b/a NATIONAL RV, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

On July 2, 2004, a fire consumed a motor home belonging to James and Desiree Boyd, along with the Boyds' attached trailer and two Harley-Davidson motorcycles. Plaintiff, Nationwide Mutual Insurance Co. ("Nationwide"), as the Boyds' subrogee, filed this action to recover for the Boyds' losses and to seek relief for alleged breaches of express and implied warranties by Defendants National RV ("NRV") and Freightliner Custom Chassis Corp. ("FCCC").

The key question in this litigation is straightforward: What caused the fire? Nationwide's theory is that defective exhaust tubing caused the fire. Defendants deny liability and the case is schedule for jury trial on April 2, 2007. Now before the Court are the parties' motions in limine seeking to exclude certain evidence, including the testimony of the parties' experts. The Court will consider each motion seriatim.

**I.     FCCC'S MOTION IN LIMINE (Doc. No. 177)**

In its motion in limine, FCCC seeks the exclusion of the following: testimony by Nationwide's expert witnesses; evidence related to Nationwide's claims under the Magnuson-Moss Warranty – Federal Trade Commission Improvement Act ("Magnuson-Moss"),

Pub. L. No. 93-637, 88 Stat. 2183 (1975); evidence related to Nationwide's claims for attorney's fees; evidence of other incidents or lawsuits; and any evidence not produced during discovery. (Doc. No. 177.)  For the reasons that follow, FCCC's motion will be denied.

### A. Nationwide's failure to disclose expert witnesses' information

FCCC first argues that Nationwide's expert witnesses should be excluded on the grounds that Nationwide failed to comply with initial expert disclosure requirements.  Federal Rule of Civil Procedure 26(a)(2)(B) provides that parties must disclose signed expert-witness reports, which must include, among other things, information related to the witness's conclusions, qualifications, compensation, and litigation history.[1]

Nationwide recognizes that by failing to provide curricula vitae and complete, signed expert reports, it did not fully comply with Rule 26(a)(2).  However, Nationwide claims that its failure was inadvertent and that it cured each deficiency shortly after the oversights were discovered.

---

[1] Federal Rule of Civil Procedure 26(a)(2)(B) provides in full that:

> Except as otherwise stipulated or directed by the court, [disclosure of the identity of an expert witness] shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness.  The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

FCCC argues that the oversights nevertheless warrant exclusion under Rule 37(c)(1), which provides that a Court may sanction a party who does not comply with Rule 26(a).[2] However, FCCC concedes that Nationwide "eventually produced the information required by Rule 26(a)(2)(B)" (Doc. No. 178, at 11; FCCC's Mem. in Support 5), and any other deficiencies have been cured through deposition testimony. Thus, although the Court appreciates that "a defendant should not be forced to go through such great lengths to have a plaintiff do what Rule 26 plainly and unequivocally requires" (id.), Nationwide's mistakes have been adequately and timely cured so that the Court finds that the exclusion of Nationwide's evidence would be unwarranted.

### B. Mr. Mignogno's expert testimony

FCCC also seeks to exclude Nationwide's origin-and-cause expert witness, Dr. Mignogno, on the grounds that his testimony does not satisfy the evidentiary requirements set forth in Federal Rule of Evidence 702 and in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S.

---

[2] Rule 37(c)(1) provides that:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Fed. R. Civ. P. 37(c)(1) (emphasis added).

579 (1993).[3]  Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

As the Third Circuit has explained, "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003). The rules impose an obligation on district court judges to act as "gatekeepers" to ensure that an expert witness's testimony meets those three threshold requirements before consideration by a jury. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); Daubert, 509 U.S. at 597. In fulfilling its obligation as a gatekeeper, a court exercises discretion when deciding whether to admit or deny expert testimony. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146-47 (1997).

When considering the first requirement, qualification, a Court must discern whether a purported expert has specialized knowledge in a given field. However, the bar for establishing that a witness has the requisite specialization is not set especially high, as "a broad range of knowledge, skills, and training qualify an expert." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994). The inquiry under the second requirement, reliability, while "flexible," is significantly more searching. Kumho Tire, 526 U.S. at 150-52 (The gatekeeping requirement exists "to make certain that an expert, whether basing testimony upon professional studies or

---

[3] NRV has separately moved to exclude Mignogno for largely the same reasons. (Doc. No. 138.)

personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."). When deciding whether an expert witness's testimony is based upon a reliable methodology, a court should take the following factors into account:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Paoli, 35 F.3d at 742 n.8. The third requirement, fit, demands that "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." Schneider, 320 F.3d at 404.

In this case, Nationwide's origin-and-cause expert, Mr. Mignogno, is certified by the National Association of Fire Investigators as a fire and explosion investigator, with a specialty as a certified vehicle fire investigator, and as a certified fire investigator instructor. He has testified as an expert in over a dozen cases, in roughly half of which Mignogno was retained to determine the cause and origin of fire. Mignogno has worked as an investigator for ten years, and before that he worked in automotive repair for twenty years. For 28 years, he has served as a firefighter, including five years as a fire chief. Mignogno's general qualifications to testify to the cause of the fire that set the Boyds' motor home ablaze are not in dispute. Nevertheless, FCCC argues that Mignogno should not be permitted to testify as to several of his conclusions and opinions.

On July 16, 2004, Nationwide asked Mignogno to inspect the vehicle and attempt to

determine the fire's cause.  After concluding his investigation, Mignogno completed his expert report on October 15, 2004.  In that report, Mignogno drew several major conclusions: (1) that the fire originated in the right rear corner of the vehicle; (2) that the vehicle's components (including electrical, heating, and refrigeration components) did not cause the fire; (3) that a hole existed in the flexible exhaust pipe before the fire occurred; (4) that "[t]he hole in the flexible exhaust pipe . . . allowed hot exhaust gasses to contact combustibles in the area, which ignited the combustibles, causing this event"; and (5) that a "flexible exhaust pipe should not have been used in this area.  Instead a pre-bent exhaust pipe should have been used."  (Doc. No. 178, Ex. A; Mignogno's Oct. 15, 2004, report.)

FCCC objects on various grounds to Mignogno's third, fourth, and fifth conclusions.  FCCC argues that Mignogno is unqualified to speak to the third and fifth conclusions – that a hole in the flexible exhaust pipe existed before the fire occurred and that a pre-bent exhaust pipe should have been used – and that Mignogno's methodology in reaching his fourth conclusion is unreliable.  The Court will address each objection in turn.

> **1.     Mignogno's conclusions regarding the formation of a hole in the flexible tubing and the preferability of a pre-bent exhaust pipe**

With respect to when the hole in the exhaust pipe existed, Mignogno explained that through visual inspection of the relative oxidation levels at the hole he could determine that the hole existed before the fire occurred.  (Mignogno Dep. 51.)  FCCC asserts that Mignogno is plainly unqualified to reach that conclusion.  As described above, the Federal Rules of Evidence require that expert witnesses testify with the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Kumho Tire, 526 U.S. at 152.  Central to the Court's gatekeeping role, therefore, is defining the relevant field of expertise, as "there are many

different kinds of experts, and many different kinds of expertise." Kumho Tire, 526 U.S. at 150.

FCCC characterizes the relevant field as metallurgy and material science while Nationwide characterizes the relevant field as fire investigation. The Court agrees with Nationwide that Mignogno's testimony bears on fire investigation rather than the metallurgical properties of the flexible tube. Specifically, Mignogno justified his conclusion as follows: "[i]f the hole had occurred after the fire by means of impact . . . the oxidation level [at the point of impact] would be different from the area around it." (Mignogno Dep. 52.) He stated that he has no opinion as to how long before the fire the hole formed, or the manner in which it formed. (Mignogno Dep. 52, 56.) Rather, his conclusion and the basis for his opinion was limited to his observation that, in his experience as a fire investigator, holes developing after a fire have different oxidation levels, and the hole in question did not. The parties agree that Mignogno is amply qualified to testify within the field of expertise as a fire investigator, and this conclusion falls within the relevant field of expertise.

On the other hand, it is substantially less certain that Mignogno is qualified to testify as to his conclusion that a pre-bent pipe should have been used. In his deposition, Mignogno testified that he reached his opinion that rigid pre-bent tubing is preferable because "over [his] years of seeing flexible pipe the times that I have worked with flexible pipe and have had to replaced flexible pipe, it's my opinion that I think flexible pipe doesn't last as long as rigid pipe." (Mignogno Dep. 57.) But Mignogno's qualifications with respect to comparing rigid tubing to flexible pipe are unclear. For example, although Mignogno testified that he worked as a technician for twenty years, he testified that he came in contact with flexible tubing only "[o]nce in a while" in vehicle application. (Mignogno Dep. 53-54.) While Mignogno's views

7

about rigid pre-bent pipe may have formed through extensive experience as an automobile mechanic, it is an open question based on the record before the Court as to whether Mignogno is qualified as an "expert" within the meaning of the Federal Rules of Evidence to offer his opinion that flexible tubing should not have been used.  Accordingly, the Court will reserve ruling on the admissibility of Mignogno's testimony related to his conclusion that rigid pre-bent tubing should have been used in the motor home.

### 2. The reliability of Mignogno's methodology in determining the cause of the fire

FCCC also argues that Mignogno should not be permitted to testify as to his fourth conclusion because "[b]ased on the text of the report, Mr. Mignogno's opinion amounts to nothing more than a 'hunch.'" (Doc. No. 178, 14; FCCC's Mem. in Support of the Mot. in Limine 8.)  The Court disagrees.  Mignogno, in his deposition and in his report, indicated that his investigation was conducted in accordance with NFPA 921.  Courts, inside and outside of this circuit, have uniformly found that NFPA 921 (promulgated by the National Fire Protection Association) is a "lengthy and specific document that contains detailed discussions on investigations of everything from motor vehicles and Molotov cocktails to explosions and electrical fires."  Booth v. Black & Decker, Inc., 166 F. Supp. 2d 215, 220 (E.D. Pa. 2001); Pappas v. Sony Elecs., Inc., 136 F. Supp. 2d 413, 425 & n.15 (W.D. Pa. 2000); Snodgrass v. Ford Motor Co., No. 96-1814, 2002 U.S. Dist. LEXIS 13421, at *48-57 (D.N.J. Mar. 28, 2002); see also Fireman's Fund Ins. Co. v. Canon U.S.A., Inc., 394 F.3d 1054, 1057-58 (8th Cir. 2005) ("[NFPA 921] qualifies as a reliable method endorsed by a professional organization."); McCoy v. Whirlpool Corp., 214 F.R.D. 646, 653 (D. Kan. 2003) (describing NFPA 921 as the "gold standard" for fire investigations).

In this case, Mignogno testified that he followed the approach set forth in NFPA 921 when conducting his investigation of the motor home.[4] Section 4.1 of NFPA 921 states that "[w]ith few exceptions, the proper methodology for a fire or explosion is to first determine and establish the origin(s), then investigate the cause: circumstances, conditions, or agencies that brought the ignition source, fuel, and oxidant together." Here, after receiving his assignment, Mignogno first determined through examination of the exterior of the vehicle that the fire began at the "right rear corner of the vehicle." (Doc. No. 178-2, at 3; Mignogno's Oct. 15, 2004, report.) Then Mignogno investigated the vehicle's wiring, components, the engine's electrical system, trailer, and most importantly the exhaust pipe, in which he discovered a hole that he believed preexisted the fire.[5] Through his observations, Mignogno concluded that the hole in the

---

[4] FCCC complains that Mignogno has not produced the exact version of NFPA 921 that he relied upon, and thus FCCC cannot verify that Mignogno scrupulously followed the methodology prescribed therein. Nationwide counters that "counsel for FCCC fails to mention that he had a copy of the NFPA 921 at the deposition of Defendant's expert." (Doc. No. 181, at 6 n.4.) Although FCCC's argument is well taken that it "has not had an opportunity to review the very document that provided the 'scientific methodology' that Mr. Mignogno supposedly followed" (Doc. No. 188, at 6), Daubert does not dictate discovery. Nationwide has adequately met its burden to show that NFPA 921 provides a reliable methodology and that Mignogno followed the guidelines dictated by it. FCCC has not controverted Nationwide's showing to that effect. Furthermore, the Court agrees with the view of the Eastern District of Pennsylvania that "Daubert does not require that an expert physically refer to a treatise such as NFPA 921 when its fundamental concepts are intimately familiar to the expert and thus an intuitive part of his basic methodology." Chester Valley Coach Works v. Fisher-Price, Inc., No. 99-4197, 2001 U.S. Dist. LEXIS 15902, at *10 n.5 (E.D. Pa. Aug. 29, 2001).

[5] Section 18.2.6 of NFPA 921 provides that "[i]n a determination of an accidental cause, the same precautions regarding elimination of other potential ignition sources should be carefully considered. For example, the determination that an appliance is the ignition source in a fire is not simply related to its being at the origin. Prior to an appliance being identified as the ignition source, the method or mode of failure should be established. It is equally important that the material first ignited and the ignition sequence be identified, especially to establish a fire cause in the absence of physical evidence of an ignition source." Mignogno appears to have complied with all these precautions.

exhaust pipe permitted the exhaust gases to contact combustibles, thereby causing the fire.

Although FCCC does not dispute that Mignogno complied with NFPA 921, FCCC asserts that Mignogno's deposition reveals "critical deficiencies" with his methods. (Doc. No. 178, 18-19; FCCC's Mem. in Support 12-13.) For example, FCCC suggests Mignogno's investigation was "obviously incomplete" because he did not personally speak with the Boyds or review a deposition transcript, and instead relied on the facts "provided by a potentially biased party [a claims adjuster for Nationwide]." (Id.) However, FCCC provides no support for the proposition that Rule 702 (or NFPA 921) establishes a special obligation on an expert witness to conduct interviews or to review deposition records in order to assure himself that the circumstances presented to the expert are those that actually occurred. By the same token, FCCC asserts that Mr. Mignogno "relied on vague, generalized data from the 'Ignition Handbook' and a website to provide him with information regarding the temperature of the exhaust and the ignition temperature of the fiberglass." Mignogno's reliance on secondary data does not suggest unreliability in his methodology or his conclusion.[6] His conclusion as an expert may be challenged at trial, but to the extent that Mignogno's conclusion is supported by the same level of intellectual rigor that a fire inspector must rely upon, the Court will permit him to testify regarding his analysis and conclusions.

    C.    **Nationwide's Magnuson-Moss and attorney's fees claims**

FCCC also seeks to exclude all reference to or evidence in support of Nationwide's

---

[6] Indeed National RV's expert witness, W.L. Davison, suggested that his own figure for the ignition temperature of fiberglass might have come from the ignition handbook. (Davison Dep. 118.)

claims under the Magnuson-Moss act and for attorney's fees for such claims.[7] Nationwide argues that FCCC's arguments are premature and not appropriate for a motion in limine. The Court agrees and will deny FCCC's motion without prejudice to a later motion for judgment as a matter of law.

### D. Evidence of other incidents and lawsuits

FCCC argues that any evidence of other incidents that are not "substantially similar" to the instant case should not be allowed under Federal Rules of Evidence 401 and 403. In the motion, FCCC represents that it "recently learned of another incident that involves the allegation of a problem with the flexible tube used in the exhaust system and supplemented its previous discovery response identifying this other incident. No facts relating to this other incident have been produced or discovered in this case, however. Thus, the circumstances surrounding the other incident are not known." (Doc. No. 178, at 29; FCCC's Mem. in Support 23.) The Court accordingly is unable to discern whether the evidence of other incidents is properly admitted in this case. However, should Nationwide attempt to offer evidence related to such incidents at trial, it should be prepared to justify the evidence's relevance to this case.

### E. Evidence not produced

FCCC seeks to preclude Nationwide from introducing any evidence that has not been disclosed to date. FCCC has not identified which evidence it has in mind. When exercising its discretion to exclude evidence for failure to comply with discovery orders, the Court should consider a number of factors before imposing the sanction of exclusion, including:

---

[7] NRV filed a separate motion, in which it joined in FCCC's motion "relative to plaintiff's Maguson-Moss Warranty Act claims." (Doc. No. 169.)

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order.

In re TMI Litig., 193 F.3d 613, 721-22 (3d Cir. 2000). Due to the nature of the case-by-case inquiry that the Court must engage in when deciding whether to exclude evidence, the Court will deny FCCC's motion in this respect without prejudice.

## II.     NATIONWIDE'S MOTIONS IN LIMINE (Doc. Nos. 173, 175)

Nationwide seeks to exclude testimony offered by NRV's expert witness, W.L. Davison, and a fact witness, Richard Gonzalez.

### A.     W.L. Davison's expert testimony

Nationwide argues that Davison should not be allowed to testify as an expert under the standards set forth in Rule 702 and Daubert, supra. Nationwide's argument rests primarily on its assertion that Davison did not conduct a sufficiently thorough investigation of the Boyds' motor home before reaching his conclusions. Nationwide also suggests that Davison's testimony is unreliable because he neither conducted a complete investigation pursuant to the guidelines set forth in NFPA 921 nor attempted to determine the cause of the fire himself.

NRV argues that it intends to call Davison for the sole purpose of rebutting Mignogno's testimony, not to advance a different causation theory. To that effect, NRV correctly argues that Nationwide bears the burden of proof to identify the cause of the fire. In his expert report, Davison focuses on Mignogno's conclusions, rejects them, and concludes that the cause of the fire is undetermined and that Mr. Mignogno's theory is otherwise unsupportable. Given that Davison is offered as an expert witness to counter Mignogno's testimony, the Court notes that

the scope of Davison's investigation may well differ from Mignogno's. Although Nationwide insists that Davison did not follow any reliable methodology and while his deposition reflects his view that NFPA 921 may not "the end-all authoritative document" (Doc. No. 176-3, at 15; Davison Dep. 25), the Court understands Davison's expert report to explicitly reference NFPA 921 and he Davison unmistakably stated in his deposition that his inspection "to the extent that it was completed" was conducted in conformance with the NFPA 921 guideline (id.). The Court therefore finds that his methodology is sufficiently reliable to testify as the cause of the fire, or the indeterminacy thereof.

### B.   Richard Gonzalez

Nationwide also argues that NRV should not be allowed to introduce Richard Gonzalez as a witness in this case. In this regard, Nationwide first contends that Gonzalez should not be permitted to testify as an expert witness because NRV has never identified him as an expert pursuant to their pretrial disclosure obligations. Nationwide also argues that because NRV failed to disclose Gonzalez as a "fact" witness until February 2, 2007, in an amended pretrial statement, he should not be allowed to testify. Finally, Nationwide argues that Gonzalez should not be permitted to testify, because his testimony is likely to mislead or confuse the jury.

NRV responds that it seeks to introduce Gonzalez for a single purpose: "He will merely testify to the manner in which his 'heat tests' were conducted, and Davison can use the information generated thereby as he sees fit." (NRV's Response at 6.) As such, if Gonzalez is permitted to testify, he will do so as a fact witness. However, to the extent that Nationwide has failed to explain how introduction of such testimony would unduly prejudice its case, or whether it is able to cure such prejudice, the Court will not exclude Gonzalez solely on the grounds that

he has been introduced "late in the game." While Nationwide's motion will be denied, Nationwide is free to object at trial to the introduction of Gonzalez as a fact witness pursuant to Federal Rule of Evidence 703[8] or other applicable rules.

## V.     CONCLUSION

For the foregoing reasons, the Court will deny the parties' motions in limine. An appropriate order follows.

---

[8] The advisory committee notes to the 2000 amendments of Federal Rule of Evidence 703 state that "[t]he amendment provides a presumption against disclosure to the jury of information used as the basis of an expert's opinion and not admissible for any substantive purpose, when that information is offered by the proponent of the expert."

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATIONWIDE MUTUAL** | : | |
| **INSURANCE CO., a/s/o JAMES** | : | Civil Action No. 1:05-CV-2509 |
| **BOYD & DESIREE BOYD,** | : | |
|     Plaintiffs | : | (Chief Judge Kane) |
| | : | |
| v. | : | |
| | : | |
| **NATIONAL RV HOLDINGS, INC.,** | : | |
| d/b/a NATIONAL RV, et al., | : | |
|     Defendants | : | |

## **ORDER**

**AND NOW**, on this 28th day of March, 2007, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Nationwide Mutual Insurance Co.'s motions in limine (Doc. Nos. 173, 175), National RV Holdings, Inc.'s motions in limine (Doc. Nos. 138, 169), and Freightliner Custom Chassis Corp.'s second amended motion in limine (Doc. No. 177) are **DENIED**.  **IT IS FURTHER ORDERED** that the remaining motions (Doc. Nos. 101, 134, 187) are denied as **MOOT**.

                                                   S/ Yvette Kane
                                                   Yvette Kane, Chief Judge
                                                   United States District Court
                                                   Middle District of Pennsylvania